FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

2020 FEB -7  PM 4: 03

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
        DEPUTY

| | |
|---|---|
| ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,<br>*Movants*,<br><br>v.<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA and WAYNE LAPIERRE,<br>*Respondents*. | A20MC149 LY<br><br>Miscellaneous Case No. _____ |

## MOTION TO QUASH THIRD PARTY SUBPOENA

Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "**Movants**") file this *Motion to Quash Third-Party Subpoena on Six Flags Entertainment Corporation* ("**Six Flags**"), attached as **Exhibit A** hereto, and in support thereof respectfully show as follows:

### I.   SUMMARY

This instant action arises out of a multi-district dispute between the National Rifle Association ("**NRA**" or "**Respondent**") and its longtime public-relations firm, Ackerman McQueen ("**AMc**"). As part of its scatter-shot discovery strategy, the NRA has served numerous third-party subpoenas to current and former clients of AMc around the country, including Six Flags—a party which has not been a client of AMc in nearly twenty years. The third-party subpoena at issue in this Motion is harassing and seeks information wholly irrelevant to the claims and defenses in the lawsuit. Because the Western District of Texas is the court of compliance for these subpoenas, Movants respectfully request this Court quash the subpoena and prohibit the NRA and its counsel from pursuing these abusive and harassing discovery tactics.

## II.   BACKGROUND

### A.   Litigation History

1. On August 30, 2019, the NRA sued AMc, Mercury Group, Martin, and Greenberg in Texas federal court,[1] while maintaining three additional cases against AMc in Virginia for the same claims.[2] After Movants filed a motion to dismiss, the NRA filed its First Amended Complaint on October 25, 2019 (Doc. 18), adding new individual defendants (current and former AMc employees). Movants then filed a new motion to dismiss (Doc. 28) on November 15, 2019. That motion is currently pending. Movants also filed their Amended Answer, Amended Counterclaim, and Third-Party Complaint (Doc. 31) on November 15, 2019.

2. The NRA's First Amended Complaint asserts the following causes of action:

   a. Claims for false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (*see* Doc. 18 at 40);

   b. Copyright infringement under 17 U.S.C. § 101 *et seq.* (*see* Doc. 18 at 42);

   c. Conversion (*see* Doc. 18 at 43);

   d. Fraud (*see* Doc. 18 at 45);

   e. Breaches of fiduciary duties (*see* Doc. 18 at 52);

   f. Conspiracy (*see* Doc. 18 at 55);

   g. Breach of fiduciary duty of loyalty (*see* Doc. 18 at 56); and

   h. Breach of contract (*see* Doc. 18 at 58).

3. In response, AMc asserted a counterclaim and third-party complaint for:

   a. Libel per se (the NRA falsely accuses AMc of extortion) (see Doc. 31 at 111);

---

[1] *NRA v. Ackerman McQueen, Inc., et al*, Case No. 3:19-cv-02074-G, in the United States District Court for the Northern District of Texas, Dallas Division.

[2] The NRA also amended its complaint in Virginia on February 6, 2020 to allege additional claims it already brought in the Texas action back in October 2019.

  b. Tortious interference with contract (regarding AMc employment agreements) (see Doc. 31 at 112);

  c. Declaratory judgment (the NRA waived the confidentiality provision of the Services Agreement between the NRA and Ackerman McQueen) (see Doc. 31 at 112);

  d. Fraud (relating to NRATV and compensation of talent hired to promote the NRA) (see Doc. 31 at 113); and

  e. Breach of contract (regarding the NRA's failure to pay AMc's invoices, failure to indemnify and reimburse AMc for expenses arising from government inquiries, failure to obtain a $3 million letter of credit securing AMc's invoices, and failure to pay a termination fee upon termination of the Services Agreement) (see Doc. 31 at 113-122).

**B.**   **The NRA's Abusive Discovery Tactics**

4. To further understand the extent of the artifice and harassment by this subpoena, it is necessary to consider the litigation history and discovery status: the NRA sued AMc in Virginia in April 2019 for alleged failure to comply with audit requests and not turning over certain information, including a contract with Lt. Col. Oliver North ("*Col. North*").

5. The NRA sued AMc again in Virginia in May 2019 for breach of fiduciary duty and breach of the Services Agreement against (confidentiality), relating to allegations of "leaks" and a false extortion narrative. The NRA then sued AMc in Texas federal court in September 2019 for intellectual property claims, breach of contract *yet again* (for failure to comply with audit request and to turn over certain information, including the Col. North contract), and fraud.

6. And the NRA filed a fourth lawsuit against AMc for a third time in Virginia in September 2019 for return of property, which AMc has not opposed but also for which the NRA must first pay AMc to cover the expense of the return. The NRA has incorporated in the Texas action the claims in the three Virginia lawsuits. Those three Virginia cases have been consolidated into one.

7.     To date, the NRA has propounded more than 400 discovery requests in the Texas lawsuit alone. Those discovery requests replicate the discovery in the Virginia lawsuits. Then, on January 29, 2020, the NRA served an *additional* 140 document requests in the Virginia lawsuit, which requests are almost identical to the ones already issued in Texas. And just on February 3, 2020, the NRA served *the exact same* requests in the Texas case (an additional 108). The NRA did not even bother to change the requests to refer to the correct request numbers (*e.g.*, Virginia Request No. 61 refers to Request No. 60, and Texas Request No. 89 refer to Request No. 60 when it should refer to Request No. 88). In total, the NRA has served upon Movants more than 600 discovery requests.

8.     More abusively, the NRA issued more than 20 subpoenas to various third parties, including AMc's current and former clients (ten on January 8, 2020 and eleven on January 24, 2020). One subpoena even asks a vendor for AMc's *access credentials* so that the NRA can gain access to AMc's account.

9.     The NRA served its subpoena Six Flags on January 24, 2020.[3] Notably, none of the parties' claims or counterclaims directly reference or relate to Six Flags. The subpoena contains enumerated requests for different broad categories of documents and information related to "Digital Media" services performed by AMc. *See* Exhibit A.

10.    The connection between Six Flags and the NRA's Amended Complaint is feeble at best. The only possible reference to Six Flags, or any "Digital Media" services provided to them by AMc, occurs in the fifth unnumbered paragraph of Respondent's Preliminary Statement, in which the NRA makes an inventive but factually unsupported allegation about AMc's business relationships: "*Many of these campaigns* [referring to AMc's other clients besides the NRA],

---

[3] The NRA also served document subpoenas on ten additional third-parties located in other states on the same day.

*which cost clients tens of millions of dollars, were shut down because of their ineffectiveness, costliness, and Defendant's reluctance to provide specific performance data in accordance with its obligations."* See Doc. 18 at 4. Presumably, this allegation was made in support of the NRA's claim for fraud in relation to AMc's billing practices and its development and production of the NRA's own "digital media" platform, NRATV.

11. Apparently having no factual support for this damaging—and very public—allegation, the NRA has embarked on a blitzkrieg-scale effort to harass and intrude upon the business operations of AMc's current and former clients. The NRA seeks information from Six Flags (and the other subpoenaed parties) relating to the AMc's billing practices and provision of digital media services without limitation as to time period.

12. However, even if Six Flags were to comply with these invasive requests, any resulting document production would yield no relevant documents to support the NRA's allegations. As explained herein, Six Flags had no digital media platform and was a client so long ago that the services, technologies, and production methods used for this client simply bear no relationship to those used for the NRA. Most importantly, the subpoena seeks documents that date back the entire length of the business relationship, decades in some cases. The Six Flags subpoena is nothing but a fishing expedition to retroactively justify a previous bad-faith allegation with no basis in law or fact.

### III.   ARGUMENTS & AUTHORITIES

13. Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

14. Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties. "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Federal Rule of Civil Procedure 26(b)(1)." *Booth v. City of Dall.*, 312 F.R.D. 427, 430 (N.D. Tex. 2015). Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(1).

15. Under Rule "45(d)(1), '[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena,' and '[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply." *MetroPCS v. Thomas*, 327 F.R.D. 600, 606 (N.D. Tex. 2018) (Horan, M.J.); *see also* FED. R. CIV. P. 45(d)(1).

16. Rule 45 requires the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

**A.   The subpoena is overbroad and seek irrelevant, confidential information.**

17. The Six Flags subpoena commands production of documents by 10:00 a.m., February 10, 2020.

18. The subpoena seeks various "documents and records" and defines the terms "document" and "record" to "mean all writings of any sort" and states that "each term should be construed in its broadest sense." The definition further includes, without limitation, a description

of every imaginable type of document and any electronically recorded data that "can be obtained or translated through detection devices or other means into any reasonably useable or recordable format." *See* Exhibits A.

19. The NRA's definition of "refer or relate to" is similarly overbroad, including anything that might be "factually, legally or logically connected to the subject matter of the particular Request." *Id.* Additionally, the NRA's definition of "You" or "Your" is overly broad in that it includes not only Six Flags but also "all present and former agents, employees, representatives, advisors, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to, the direction" of Six Flags. *Id.*

20. Most importantly, the subpoena provides no limitation as to the time period for responsive documents and thus encompass the entire history of Six Flags' business relationships with AMc. However, Respondent has already represented that the relevant time period of the facts surrounding the Texas lawsuit begin on January 1, 2015. *See* Exhibit B at 8 (Pl.'s Request for Prod.).[4] Although Movants maintain that the relevant period begins more recently, for purposes of this Motion, January 1, 2015 at least represents the outer bounds of potential relevance. Accordingly, any Subpoena that purports to seek documents from a date prior to January 1, 2015 is facially irrelevant as to any pre-2015 documents.

### B. The subpoena subjects Six Flags to undue burden.

21. "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the litigation." *Thomas*, 327 F.R.D. at 609 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d

---

[4] Only the definitions and instructions section has been included with this filing for ease of reference.

812, 818 (5th Cir. 2004)). The following factors are relevant to the consideration of whether the subpoena imposes an undue burden:

> (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.

*Id.* Where, as here, the documents are requested from a non-party, the Court "may also consider the expense and inconvenience to the non-party." *Id.*

22. The relevance of a subpoena seeking discovery is measured by the standard articulated in Rule 26(b)(1), which limits the scope of discovery to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1); *see also Thomas*, 327 F.R.D. at 609. The subpoena must, therefore, be limited to "documents that are relevant to any party's claim or defense" and cannot be used to "develop new claims or defenses that are not already identified in the pleadings." *Thomas*, 327 F.R.D. at 609 (citing *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017)).

23. In addition to limiting discovery to relevant information, Rule 26 specifies that the discovery must be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1); *see also Thomas*, 327 F.R.D. at 609. Likewise, courts have found subpoenas to be facially overbroad where "[t]he period covered by the requests is unlimited." *Id.* (citing *Am. Fed'n of Musicians of the U.S. & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015)). As set forth above, the documents requested in this subpoena have only tenuous relevance to the NRA's claims for fraud. In light of the unrestricted time frame, it becomes evident the subpoena is only be intended to seek

documents that might develop new claims or defenses and that circumvent another court's protective order. Likewise, seeking decades of information from Six Flags is simply not proportional to the needs of the case and will impose unnecessary and unfair financial burdens upon these non-parties. The subpoena is, therefore, impermissible and necessarily unduly burdensome.

24.     Relatedly, the subpoena is facially overbroad and unduly burdensome because AMc's services to Six Flags ended roughly 20 years ago—in 2000 or 1999. There is no reasonable basis for seeking documents that were created more than two decades prior to the genesis of these lawsuits. Moreover, AMc's marketing services for Six Flags focused on a website that did not have streamed content, the primary purpose of NRATV. Therefore, any documents that could be identified from more than 20 years ago would be unrelated to the claims and defenses in this lawsuit. The subpoena should be quashed.

25.     Further, the litigants and attorneys in this case present a unique, albeit soap-opera-like, twist that militates in favor of quashing the subpoena. The NRA's lead lawyer is not simply disinterested advocates for the NRA in this matter. He is the son-in-law of the late Angus McQueen, AMc's former owner and CEO, and the brother-in-law of AMc's current CEO, Revan McQueen. His animus-infused history with the McQueen family is well-known and itself insinuates his true reason for representing the NRA against his own family. Through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets, billing information, staffing, operations, and client communications, which would circumvent a protective order walling-off one of the NRA's lawyers from AMc's highly confidential information in the Virginia cases. The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

C.  **Exceptional circumstances warrant transferring this Motion to the Northern District of Texas.**

26.  According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances. Here, exceptional circumstances exist based on the facts described herein, including the more than 600 discovery requests at issue, the more than 20 subpoenas served, and the various pending motions to quash, including a motion to quash before the issuing court (the Northern District of Texas). Another exceptional circumstance is the dispute over the protective order and the risk that a third party's compliance with said subpoenas would circumvent the protective order. These discovery issues are likely to arise (and have arisen) in several districts and will be addressed by the Northern District of Texas, such that judicial economy supports transferring the Motion to promote uniformity.

## IV.  CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion; quash the subpoena issued to Six Flags; transfer the Motion to the Northern District of Texas; and grant Movants any further relief, at law or in equity, to which they may be justly entitled.

Dated: February 7, 2020.

Respectfully submitted,

*/s/ Brian E. Mason*
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF CONFERENCE

On February 7, 2019, counsel for AMc conferred with counsel for the NRA regarding the Motion. Counsel for the NRA was opposed to the relief sought and was not willing to withdraw the subpoenas.

*/s/ Brian E. Mason*
BRIAN E. MASON

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas. I hereby certify that I have served the document on counsel for the NRA the issuing court in the Northern District of Texas, Dallas Division.

*/s/ Brian E. Mason*
BRIAN E. MASON