**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION**

| | |
|---|---|
| **ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, and JESSE GREENBERG,** *Movants.* <br><br> v. <br><br> **NATIONAL RIFLE ASSOCIATION OF AMERICA and WAYNE LA PIERRE,** *Respondents* | § § § § § § § § § § § § § § § § | **Miscellaneous Case No. A20MC149 LY** <br><br> **Related to Civil Action No. 3:19-cv-02074-G (N.D. Tex.)** |

**RESPONDENT NATIONAL RIFLE ASSOCIATION OF AMERICA'S OPPOSITION TO
MOVANT'S MOTION TO QUASH THIRD-PARTY SUBPOENA**

**BREWER, ATTORNEYS & COUNSELORS**

Michael J. Collins, Esq.
State Bar No. 00785493
mjc@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR RESPONDENTS
NATIONAL ASSOCIATION OF AMERICA
AND WAYNE LAPIERRE**

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ..........................................................................................1

II.  FACTUAL BACKGROUND ..........................................................................................1

III.  ARGUMENT ...................................................................................................................3

     A.  Transfer To The Northern District Of Texas Is The Proper Course of Action ...........3

     B.  The Subpoena Seeks Relevant Documents. ................................................................4

     C.  AMc's Overbreadth Challenge Lacks Merit. .............................................................6

     D.  AMc Lacks Standing To Raise Undue Burden Challenges To The Subpoena ...........8

     E.  The NRA's Discovery Requests Are Irrelevant To The Subpoena And, In Any
        Event, Are Reasonable. ..............................................................................................8

IV.  CONCLUSION ................................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brown v. Braddock*,
  595 F.2d 961 (5th Cir. 1979) ....................................................................................8

*Malibu Media, LLC v. Doe No. 4*,
  Civ. No. 12-2950 (JPO), 2012 WL 5987854 (S.D.N.Y. Nov. 30, 2012)...................................8

*Wilkerson v. Stalder*,
  Civ. Act. No. 00-304-JJB-RLB, 2015 WL 2236417 (M.D. La. May 12, 2015)........................8

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ....................................................................................7

**Other Authorities**

Fed. R. Evid. 406 ....................................................................................................4

# I.
## PRELIMINARY STATEMENT

In order to avoid disclosure of relevant information from third parties, Movants Ackerman McQueen, Inc. and Mercury Group, Inc. (together "AMc") seek to quash a subpoena served by Respondent National Rifle Association of America's ("NRA") on Six Flags Entertainment Corp. ("Six Flags"), seeking documents relevant to fraud claims that are based, in part, on representations made by AMc concerning the live digital media platform managed by AMc and known as NRATV. NRATV is not the first digital media platform that AMc has induced its clients to underwrite. Indeed, a series of digital media platforms, created and managed by AMc, have been shut down because of their ineffectiveness, costliness, and AMc's unwillingness to provide accurate performance data. Even as AMc induced the NRA into investing tens of millions of dollars into its own digital media platform based on AMc's representations that the costs would easily be recouped and later of sky-high viewership numbers, AMc knew about its long line of failures in this market and, therefore, knowingly defrauded the NRA. The NRA's subpoena to Six Flags is targeted and seeks documents relevant to the NRA's fraud claims. For these reasons, the Motion to Quash ("Motion") should be denied in its entirety.[1]

# II.
## FACTUAL BACKGROUND

In light of recently unearthed text messages, and emails, the NRA filed its First Amended Complaint ("FAC") on October 25, 2019, and claims for fraud, including AMc's fraud related to

---

[1] The numbers tell a compelling story. AMc's superfluous allegations of harassment, frivolousness, discovery abuse, and non-existent conflicts of interests ring hollow when of the roughly twenty subpoenas identified by AMc, Mot. ¶ 8, six recipients have already produced documents, *see* Exs. 1-6, 16, and six more have agreed to do so, *see* Exs. 7-12, 23. Presumably, these twelve non-parties would not dedicate their time and money to comply with a subpoena they believed was irrelevant and overbroad. And three others have or will have engaged in conversations with NRA counsel that will likely lead to further documents. *See* Exs. 13-15.

NRATV.[2]  The FAC includes allegations that AMc, the NRA's long-standing public relations firm had engaged in wide-ranging malfeasance beginning in at least 2016 that amounted to a startling betrayal by a fiduciary of the NRA.[3]  It also made clear that AMc had previously attempted to conceal AMc's wrongful conduct from the NRA by obstructing its investigation, an inquiry that resulted in attempted extortion and an unsuccessful coup of the NRA's leadership in April 2019.[4]  Upon publication of just part of the NRA's complaint in Virginia state court, an executive of the Chickasaw Nation (and AMc client) remarked: "*I bet Ackerman is in trouble on this one.  They can't produce the backup to the invoices and were allocating fully salary to these employees [to the NRA] that may have been working on our accounts*."[5]

Another component of AMc's pattern of fraudulent activity involved the development, launch, and eventual failure of NRATV, a live digital media platform sold, managed, and operated by AMc.[6]  In 2016, AMc began lobbying the NRA, touting the benefits of a live, NRA-branded digital media platform.  AMc emphasized that NRATV presented "a good opportunity to generate revenue" and that the NRA's initial investment of $10 million dollars would "pay for itself" within three years, based on AMc's experience with previous platforms developed for other clients.[7]

However, what quickly became apparent inside AMc was that no one watched NRATV's live broadcasting feed.[8]  To cover up that fact, AMc plied less knowledgeable NRA executives

---

[3] *Id.* at ¶¶ 143-151.

[4] *Id.* at ¶¶ 47-58.

[5] *Id.*, ¶ 125.

[6]  *Id.* ¶¶ 25-27.

[7] *Id.* at ¶¶ 25-26.

[8] *Id.* at ¶ 31.

2

with written presentations that systematically misrepresented and overstated NRATV's valuation and viewership levels. AMc did not disclose the fact that its valuation and viewership metrics provided to the NRA omitted the number of "unique" viewers of NRATV—***an important metric that is the industry standard for viewership performance***.[9]  AMc once claimed that NRATV had over *200 million viewers* in a single year—that is, two-thirds of the United States—and doubled-down by misleading the NRA by using out-of-context metrics to create the false impression that ***NRATV shows were as valuable as Anderson Cooper on CNN*** and other prime-time shows.[10]

Eventually, the NRA became suspicious that AMc was not accurately depicting NRATV's reach and began to request viewership information, in particular information on unique viewers.[11] These requests were consistently evaded, rebuffed, or explained away with further misrepresentations.[12]  Even by May 2019, AMc had not turned over the unique viewership data requested over a year before.[13]  Seeing little value in pouring tens millions of additional dollars into the platform, the NRA decided to shutter NRATV in June 2019.

### III.
### ARGUMENT
**A.      Transfer To The Northern District Of Texas Is The Proper Course of Action.**

The Northern District of Texas has the greatest familiarity with the nature of this case. It is presently considering one motion to dismiss and two motions to compel. Indeed, one of the motions to compel ***raises an analogous issue*** to whether Six Flag's digital media experience is

---

[9] *Id.* at ¶¶ 28-37.

[10] *Id.* at ¶ 35.

[11] *Id.*

[12] *Id.* at ¶¶ 31, 38-40.

[13] *Id.*

relevant to the NRATV claims.[14]  Moreover similar disputes may arise in connection with the subpoena.  Transfer of the Motion prevents inconsistent rulings.  *In re Nonparty Subpoena Duces Tecum*, 327 F.R.D. 23, 25-26 (D.D.C. 2018); *Lynx System Developers, Inc. v. Zebra Enterprise Solutions Corporation*, Civ. Act. 2:17-mc-43, 2017 WL 3457038 (S.D. Ohio 2017) (transferring motion to quash where, as here, the parties agreed it was proper, the pendency of the same issues before the district court, interests of judicial economy, and the desirability of consistent rulings).  For these reasons, transfer to the Northern District is the reasonable course of action.

**B.**     **The Subpoena Seeks Relevant Documents.**

The NRA believes that many, if not all, of the prior digital media campaigns that AMc used to induce the NRA to invest in the creation of NRATV were failures.  Just like NRATV, those digital media campaigns were shut down because of their general ineffectiveness, high costs, and AMc's reluctance for transparency and the provision of performance data.[15]  The NRA issued document subpoenas to AMc's former or current clients, including Six Flags, requesting documents reasonably calculated to show whether a similar result occurred and, therefore, tended to show that AMc ***knowingly*** made the false statements about NRATV discussed above and in the FAC, particularly with respect to AMc's claims of rapid profitability.  This is an ***element*** of the NRA's fraud claims and, therefore, highly relevant. *Sales v. Kecoughtan Housing Co. Ltd.*, 690 S.E.2d 91, 94 (Va. 2010) (elements of fraud claim).  And if the Six Flags subpoena and others reveal a slew of failed digital media experiments and a pattern of obstructionism and hostility to client requests, just like NRATV, that would ***factually corroborate*** the NRA's theory of liability. *See* Fed. R. Evid. 406.

---

[14] Ex. 22, Pl's. Mot. to Compel Production of Docs. and for Sanctions, Case No. 3:19-cv-02074-G (N.D. Tex.) filed January 22, 2020, ECF No. 48, at p. 8.

[15] Ex. 17, FAC at pp. 4-5.

In addition, the subpoena seeks documents relevant to AMc's allegation in its counterclaim concerning AMc's reputation harm and damages allegedly sustained.[16]  If the subpoenas reveal, as the NRA anticipates, a long running series of failures in the digital media market and tends to support its NRATV fraud claim, then such evidence would be relevant to AMc's ability to recover damages.  *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 450 (Va. 2006) ("A person maligned by [libel] . . . may recover compensatory damages for injury to reputation, humiliation, and embarrassment").

The reasonableness of the subpoena is demonstrated by what the NRA has uncovered so far.  An energy-industry advocacy, The American Clean Skies Foundation ("ACSF"), opted for an AMc branded digital media platform.  ACFS's ensuing experience with AMc was so disastrous that its former general counsel contacted the NRA and offered assistance, noting: ***"I'm pleased to see [AMc] get called on their practices finally."***  And what did those practices include?  Steep costs that were not recoverable and AMc's refusal to respond to questions and requests for information on budgets and operations.[17]

For all these reasons, the NRA issued a document subpoena to Six Flags with narrowly tailored categories of documents reasonably calculated to elicit relevant evidence.  The subpoena seeks "[d]ocuments concerning the Digital Media programming and content or platform that AMc provided" Six Flags, including any "Viewership Analytics provided by AMc." It also requests "[d]ocuments reflecting any concerns or requests to AMc for information about Six Flags Live," including "documents concerning AMc's response" to requests for information by its client.

---

[16] Ex. 26, Defs.' Am. Answer and Defendant/Counter-Plaintiff Ackerman McQueen, Inc.'s Am. Countercl. and Third-Party Compl., Case No. 3:19-cv-02074-G (N.D. Tex.), Nov. 15, 2019, ECF No. 18 ¶¶ 7-8, 118-124.

[17] Ex. 17, FAC ¶ 43.

Among other requests, the subpoena seeks the production of "budgets . . . concerning the Digital Media Content and Platform."[18]   In short, these requests directly concern relevant issues with respect to the NRA's fraud claim.

In response, AMc contends the FAC contains a "factually unsupported allegation about AMc's business relationships."[19]  This argument turns the burden of proof on its head.  In the context of a motion to quash, the ***movant bears the burden of proving that the subpoena seeks irrelevant information or otherwise overboard***.  *Wiwa v. Royal Dutch Shell Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("The moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.").

Second, AMc baldly claims "Six Flags had no digital media platform" and was a client "so long ago" that the "services, technologies, and production methods used . . . bear no relationship to those used by the NRA."[20]  Setting aside the fact that AMc has submitted no proof to support these statements, *Edgefield Holdings v. Gilbert,* Civ. No. 3:7-mc-74-N-BN, 2018 WL 1138516, at *10 (N.D. Tex. March 8, 2018 (movant has the burden of proof), if these statements are true, *Six Flags* can respond to the subpoena and state it possesses no relevant documents.

## C.   <u>AMc's Overbreadth Challenge Lacks Merit.</u>

AMc complains about the terms "document," "record," "refer," "relate," "you," or "your," but the NRA's use of those terms gives those terms no greater breadth than they bear in ordinary usage.  Indeed, the NRA's use of those terms is no broader—and, in fact, in some respects, is narrower—than AMc's use of analogous terms.  *Compare* NRA definition of "refer or relate to"

---

[18] Ex. 18, Subpoena to Produce Documents to Six Flags, served Jan. 28, 2020.

[19] Mot. ¶ 10-11 (complaining about "no factual support").

[20] Mot. ¶¶ 12, 25

*with* AMc definition & NRA definition of "document and record" *with* AMC definition. [21] Comparing these terms shows that the NRA's use is no broader what AMc has used.  AMc's argument should be rejected.

AMc's time period argument fares no better.[22]  The NRA did not include a specific time period because the NRA did not know how long Six Flags had a digital platform created and operated by AMc.  The NRA's investigation identified eleven subpoena recipients that were current or former AMc clients and sold "branded media" products by AMc, one being Six Flags. However, it was not certain *when* the Six Flags digital systems were developed and launched.  The NRA is willing to adjust the relevant time period for the subpoena once Six Flags responds and identifies when it had a digital platform created and operated by AMc.

In any event, it is black-letter law in the Fifth Circuit that modifying a subpoena is preferable to outright quashing it. In *Wiwa*, the Court of Appeals for the Fifth Circuit determined that the plaintiff's subpoena was overbroad due to its temporal scope yet limited the subpoena rather than quashing it. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 18, 821-22 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright."). The *Wiwa* Court reasoned that despite the overbroad time frame, there were periods and subject matters therein that were relevant modified the subpoena accordingly.  *Id.* at 821.  Here, the Court could modify the time period to correspond to the period during which Six Flags obtained and used

---

[21] *See* Ex. 18, NRA subpoena definitions at Section I, p. 1-2.  The AMc definitions come from a subpoena to Forensic Risk Alliance in the North Texas action. A copy of that subpoena is included in the appendix as Ex. 19.  *See* Section II, ¶¶ 2, 14, and 17. A comparison of "you" and "your" is possible by locating Section II, No. 2 of Ex. 19 (AMc's FRA subpoena) and Section I No. 5 of Ex. 18 (NRA Six Flags Subpoeana). *See also* AMc's First Requests for Production to Respondents, at ¶ 63 (defining "document") and ¶ 66 (defining "relate" "related to" or "relating to"), marked Ex. 20.

[22] Mot. ¶¶ 11, 20, 23.

digital media technology from AMc.  Accordingly, the Motion should be denied, and Six Flag should produce response materials.

**D.**   **AMc Lacks Standing To Raise Undue Burden Challenges To The Subpoena.**

As Wright & Miller explain, "[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action."  Fed. Prac. & Proc., § 2459 (collecting cases).  AMc's undue burden argument is procedurally improper and should be disregarded.  *Brown v. Braddock*, 595 F.2d 961, 967 (5th Cir. 1979); *Malibu Media, LLC v. Doe No. 4*, Civ. No. 12-2950 (JPO), 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012); *Wilkerson v. Stalder*, Civ. Act. No. 00-304-JJB-RLB, 2015 WL 2236417, at *3 (M.D. La. May 12, 2015).

**E.**   **The NRA's Discovery Requests Are Irrelevant To The Subpoena And, In Any Event, Are Reasonable.**

The NRA's efforts before and during the Virginia case to obtain relevant and responsive documents was largely unsuccessful.[23]  In that case, AMc made the tactical choice to evade production of documents and to conceal others through deficient productions.  To stop this potential discovery abuse from happening again, in the Northern District case the NRA served robust and encompassing discovery request.  Despite its complains, AMc **has not filed a motion for a protective order** against the NRA's requests.  Moreover, the NRA's discovery requests have no legal bearing on the validity of the Six Flags subpoena and, in any event, they are reasonable given the number of complex claims at issue in the case.  In light of the history of its *own* discovery abuses and the irrelevancy of the issue to the matter at hand, AMc's charge falls flat.[24]

---

[23] Ex. 17, FAC ¶¶ 45-57.

[24] AMc did not hesitate to serve 178 requests for production in the Northern District or sue a former NRATV host for defamation when he had the courage to speak out against AMc's corrupt practices. *See* Exs. 20, 23-24. In addition, AMc fails to mention that in the Northern District case seeks to hold personally accountable four senior executives of AMc for the frauds.  It also contains federal claims under the Lanham and Copyright Acts.

## IV.
## <u>CONCLUSION</u>

For all the reasons stated herein, respondents respectfully request the Court transfer the

Motion to the Northern District of Texas or deny the Motion and, if necessary, modify it.

Dated: February 14, 2020        Respectfully submitted,

**BREWER, ATTORNEYS & COUNSELORS**


By: */s/ Michael J. Collins*
      Michael J. Collins, Esq.
      State Bar No. 00785493
      mjc@brewerattorneys.com
      1717 Main Street, Suite 5900
      Dallas, Texas 75201
      Telephone: (214) 653-4000
      Facsimile: (214) 653-1015

**ATTORNEYS FOR RESPONDENTS**
**NATIONAL ASSOCIATION OF AMERICA**
**AND WAYNE LAPIERRE**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically

served via the Court's electronic case filing system upon all counsel of record on this 14th day of

February 2020.

*/s/ Michael J. Collins*
Michael J. Collins