IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – AUSTIN DIVISION

| | | |
|---|---|---|
| ACKERMAN MCQUEEN, INC., <br> MERCURY GROUP, INC., HENRY <br> MARTIN, WILLIAM WINKLER, <br> MELANIE MONTGOMERY, AND JESSE <br> GREENBERG, <br> *Movants*, <br><br> v. <br><br> NATIONAL RIFLE ASSOCIATION OF <br> AMERICA and WAYNE LAPIERRE, <br> *Respondents*. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Miscellaneous Case No. A20MC149 LY <br><br> Related Civ. Action No. 3:19-cv-02074-G <br> (Northern District of Texas) |

**REPLY IN SUPPORT OF MOTION TO QUASH THIRD PARTY SUBPOENA**

To quash a third party subpoena, "one must have a 'personal right or privilege' in the requested documents."[1] The Six Flags subpoena itself demonstrates that personal right when it requests documents that AMc created. Even the NRA argues that the documents will uncover AMc's alleged knowledge and prior business practices—*i.e.*, information it personally created or possessed (has a personal right in). The standing challenge "lacks merit."[2]

Despite attaching hundreds of unnecessary pages of documents,[3] the NRA has failed to rebut Movants' showing that the subpoena to Six Flags is overbroad, irrelevant, and harassing. Notably, the NRA relies on alleged information from third parties in support of its subpoena and Response while refusing to actually disclose that information or produce the alleged documents.[4]

---

[1] *Garcia v. Prof'l Contract Servs.*, No. A-15-CV-585-LY, 2017 U.S. Dist. LEXIS 5931, at *2-3 (W.D. Tex. Jan. 17, 2017) (Austin Division) (ruling overbroad and irrelevant the subpoena pre-dating the action by at least ten years).
[2] *Id.* at *2.
[3] To illustrate, the NRA attached emails with subpoenaed third parties for the proposition that the Six Flags subpoena is not problematic because those third parties willingly conferred with the NRA. *None* of those subpoenas are at issue before this Court, but several are subject to motions to quash in three other jurisdictions. Moreover, the NRA only just disclosed to Movants that any third party produced any documents in support of its Response.
[4] *See* ECF 4 at 1 ("Factual Background") (claiming to have learned about AMc's "fraud" for which the subpoena is required based on "recently unearthed text messages and emails").

---

As to overbreadth, the NRA requested from Six Flags documents covering certain subject matters, which scope it then expanded by asking for documents *relating, concerning, and referring to* those subjects, *i.e.*, what in reality amounts to any document ever created bearing on those subjects—all documents created by or relating to AMc's services to Six Flags. The NRA has not shown how these requests are "narrowly tailored" as represented. As the NRA's choice case explained, a court may find undue burden from a "facially overbroad" subpoena, as here, requiring Six Flags to reach back more than 20 years for documents wholly unrelated to this present dispute.[5]

| No. | Substance of Request | Overbreadth |
|---|---|---|
| 1 | Documents *concerning* the Digital Media programming and content or platform that AMc provided to You… | Documents "concerning" the programming and content or platform includes **all** documents ever created for the "Digital Media." |
| 2 | Documents *concerning* forecasts, predictions, or estimates… | Documents "concerning" these topics include **all** documents that pre- and post-date such forecasts, predictions, or estimates, including the underlying work upon which those forecasts are based. |
| 3 | Documents *concerning* the actual performance or success of the Digital Media content and platform… | Documents "concerning" the performance of the entire content and platform includes **all** documents underlying the work upon which the performance/success are based. |
| 4 | Documents *concerning* the Digital Media programming and content or platform that AMc provided to You | Documents "concerning" the programming and content or platform again includes **all** documents ever created for the "Digital Media" as with Request No. 1. |
| 6 | Documents that *relate to* the amount of money spent by You on the Digital Media content and platform. | Documents that "relate to" the money spent necessarily includes **all** documents underlying the money spent, *i.e.*, all the documents relating to the services performed—as opposed to documents that reflect the amount of money spent, *i.e.*, invoices already requested in Request No. 7. |
| 9 | Documents and communications, prepared by You, AMc, or Mercury, that *refer or relate to* the following projects: Six Flags Live. | As with Requests No. 1 and 4, documents that "refer or relate to" Six Flags Live includes **all** documents that in any way mention the project, including all documents from inception to cessation, which is grossly overbroad for any purpose in the litigation. |

---

[5] *See Wiwa v. Royal Dutch Shell Petroleum, Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

Moreover, because Six Flags and AMc terminated their relationship in 1999-2000, there is no reasonable relevance of such documents to this dispute today, *more than twenty years later*. To further illustrate the stark contrast in technology that makes this request harassing and incredulous (in addition to the time gap alone), YouTube began in 2005, the first video livestream program (Livestream) launched in 2007, and today livestream is a mainstay of the (social) media industry. In other words, if indeed the NRA actually seeks information about Six Flags' allegedly "similar-to-NRATV" platform, none exists, considering that livestreaming (NRATV) was not even a "thing" by the time the Six Flags contract ended—nor something AMc was providing for it. Although the NRA argues the subpoena can be modified to a relevant timeframe, it failed to argue *at all* how documents <u>more than</u> 20 years old (any such documents were *last* created in 1999-2000) are relevant to the livestream platform of NRATV, let alone how to limit the subpoena.[6]

Additionally troublesome is the NRA's reliance on its own allegations and "beliefs" rather than any supporting evidence. When claiming "no one watched NRATV's live broadcasting feed," the NRA cites to its own First Amended Complaint.[7] The NRA also argued that it "believes that many, if not all, of the prior digital media campaigns that AMc used to induce the NRA to invest in the creation of NRATV were failures."[8] But subjective belief is not the proper standard for determining whether the NRA *first* had a good faith basis in law and fact for asserting a claim to warrant a third party subpoena. We can believe pigs fly, but that does not permit us to subpoena the farmer and all his co-op members for all information about their pigs.

---

[6] In the case the NRA relies upon for the contention that this Court may modify the subpoena, (1) the Court used the party's own temporal limitation for the modification, and (2) the Court modified the subpoena to avoid delay because it was unable to determine the basis for the lower court's ruling in quashing the subpoena and whether there was error, not just because it thought the subpoena was worthy of modification. *See Wiwa*, 392 F.3d at 821 & n.45.
[7] ECF 4 at 2.
[8] *Id.* at 4.

Case in point, the NRA says in its Response and Complaint "many, if not all" of the prior AMc clients had failed media campaigns without ever once saying which clients or providing any support.[9] The NRA also alleges in its Response and Complaint that, "[j]ust like NRATV, those digital media campaigns were shut down because of their general ineffectiveness…."[10] But, again, the NRA never once mentions who "those" "failed" clients are, other than allegedly American Clean Skies Foundation, addressed below. The reason? Because this is a fishing expedition. That improper motive is exposed when considering (1) the NRA subpoenaed third parties who were *never* AMc clients—demonstrating the NRA does not even know who the clients are, let alone that their AMc media campaigns were unsuccessful; and (2) the NRA allegedly wants information about "failed" campaigns that were "shut down," yet it subpoenaed current clients. Typically this ancillary discovery history is irrelevant, but here it is necessary to understand the NRA's gamesmanship.

Further, the NRA misrepresents to this Court the parties' understanding, agreement, and business practice concerning what analytics would be (and were) provided. In fact, at no point in this litigation, in the three lawsuits the NRA lodged against AMc in Virginia, or in either discovery process has it ever defined "unique" viewership or indicated how the agreed-upon numbers AMc provided (for years) of completed, engaged, and total views were insufficient. What the NRA purports to "reasonably" request here does not exist because the NRA never requested such metrics at the time and, indeed, such measurement was impossible: one cannot count whether person A is watching NRATV content across multiple platforms (website, Facebook, etc.) and devices.

The NRA then cites to a deposition from a former employee of American Clean Skies Foundation ("*ACSF*") to propose that his testimony is proof AMc charged "steep costs that were

---

[9] ECF 4 at 4.
[10] *Id.*

not recoverable" and refused "to respond to questions and requests for information on budgets and operations."[11]  Several issues: (1) ACSF has no relation to Six Flags; (2) that individual had no degree or prior experience with accounting for proper budgeting practices; and (3) the ACSF creator and its Board repeatedly approved the AMc budgets and work performed.

The NRA also relies on offensive use of the attorney-client privilege in support of its arguments, which is the subject of pending disputes before the Northern District of Texas.  Namely, the NRA accuses AMc of "obstructing its investigation" by "attempt[ing] extortion and an unsuccessful coup," but (1) the evidence baldly demonstrates the opposite, and (2) the extortion idea came from the NRA's counsel, hence the reason the NRA continues to assert privilege over the *underlying fact* (read: non-privileged) of who first claimed attempted extortion.  Such an improper sword-and-shield use of the attorney-client privilege is improper as a basis for granting the NRA its overreaching subpoena.

Beyond these reasons, the NRA also has an improper motive for seeking the documents.  On the one hand, the NRA concedes, in different verbiage, that it wants to use this information to show AMc acted in conformity with prior bad acts.  On the other hand, the NRA's lead counsel is using these subpoenas to circumvent the protective order it seeks to unwind.  That order prohibits lead counsel from accessing, reviewing, or using AMc's Highly Confidential information.  But if the NRA could obtain those documents through a third party *first*, AMc would have no opportunity to designate the information Highly Confidential.  The fact that AMc just learned through the

---

[11] ECF 4 at 5.  *See also id.* at 8 fn. 24 wherein the NRA suggests AMc wrongfully sued a former employee who defamed AMc.  Noteworthy is that former employee agreed to meet with AMc's counsel about retraction after receiving the required retraction demand (which, upon refusal, supports a claim for exemplary damages) until the NRA's lead counsel convinced him otherwise.  Also noteworthy, that same lead counsel was once disqualified for using his opponent's former employee as a litigation tactic against it—the same pawn-game at play here.

NRA's Response that some third parties have produced documents proves this risk to be real and imminent.

As set forth by *Wiwa*, the Six Flags subpoena (1) seeks information not relevant to the dispute in the lawsuit, which (2) exposes the lack of the NRA's need for such documents; (3) the subpoena is facially and practically overbroad, exacerbated by (4) an attenuated time period extending *beyond* 20 years; (5) the subpoena lacks particularity when it seeks *all* documents between AMc and Six Flags relating to AMc's services; and (6) the overbreadth alone demonstrates undue burden, which all factors together further emphasize.[12]

## CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion; quash the subpoena issued to Six Flags; transfer the Motion to the Northern District of Texas; and grant Movants any further relief, at law or in equity, to which they may be justly entitled.

---

[12] 392 F.3d at 818.

Dated: February 21, 2020.

          Respectfully submitted,

          */s/ Brian E. Mason*
          **Jay J. Madrid, Esq.**
          Texas Bar No. 12802000
          madrid.jay@dorsey.com
          **G. Michael Gruber, Esq.**
          Texas Bar No. 08555400
          gruber.mike@dorsey.com
          **J. Brian Vanderwoude, Esq.**
          Texas Bar No. 24047558
          vanderwoude.brian@dorsey.com
          **Brian E. Mason, Esq.**
          Texas Bar No. 24079906
          mason.brian@dorsey.com
          **DORSEY & WHITNEY LLP**
          300 Crescent Court, Suite 400
          Dallas, Texas 75201
          (214) 981-9900 Phone
          (214) 981-9901 Facsimile

          **ATTORNEYS FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

### CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas. I hereby certify that I have served the document on counsel for the NRA the issuing court in the Northern District of Texas, Dallas Division.

          */s/ Brian E. Mason*
          BRIAN E. MASON